**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BRANDON SMITHWICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-18-160-G** |
| | ) | |
| **BNSF RAILWAY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Now before the Court are Defendant BNSF Railway Company's Motion for Summary Judgment (Doc. No. 42), Plaintiff Brandon Smithwick's Response (Doc. No. 44), and Defendant's Reply (Doc. No. 50). Also pending are the following *Daubert*[1] motions:

- Plaintiff's Motion to Exclude Defendant's Expert Foster Peterson (Doc. No. 39) with Defendant's Response (Doc. No. 46); and

- Plaintiff's Motion to Exclude Defendant's Expert Amber Stern, PhD, PE (Doc. No. 40) with Defendant's Response (Doc. No. 47).

All of the motions are fully briefed and at issue.

### I.  Background

On July 3, 2017, Plaintiff was employed by Defendant and working as a conductor on a fully loaded grain train in Marland, Oklahoma, headed by two locomotives. Compl. (Doc. No. 1) ¶¶ 1, 4. Plaintiff was standing on a step in the lead locomotive when the train went into an undesired emergency (or "UDE") brake application, causing the train to

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

collide with the lead locomotive.  *Id.* ¶ 4; Def.'s Mot. Summ. J. at 9-10, Nos. 11-12, 19; Pl.'s Resp. at 7.  Plaintiff alleges that as a result of the incident, he "suffered injuries and/or aggravated a pre-existing condition to his right shoulder, neck, back and right knee," resulting in "bodily pain," "loss of enjoyment of life," "mental, psychological and emotional pain," and lost wages and earning capacity.  Compl. ¶¶ 8-10, 14-16.

Plaintiff filed this lawsuit in February 2018, raising claims against Defendant of liability under: (1) the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq.; and (2) the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. §§ 20301 et seq.

II.    *Opinion Testimony*

Because the *Daubert* motions cited above are pertinent to the Motion for Summary Judgment, the Court first addresses the admissibility of the relevant opinion testimony.

A.  *Federal Rule of Evidence 702*

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinion testimony at trial and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In applying Rule 702, the Court therefore must first determine whether the challenged witness "is qualified . . . by knowledge, skill, experience, training, or education" to state the opinion.  *Id.*; *see Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801,

806-07 (10th Cir. 2016); *see also* Fed. R. Evid. 104(a). If so, the Court "must then consider," in accordance with its "gatekeeping" function under Rule 702 and *Daubert*, "whether the expert's opinion is both relevant and reliable." *Taber*, 642 F. App'x at 807 (citing *Daubert*, 509 U.S. at 589). The Court "has wide latitude in deciding whether to exclude expert testimony" pursuant to Rule 702 and *Daubert*. *Schulenberg v. BNSF Ry.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (internal quotation marks omitted).

### B. Defendant's Proposed Witness Foster Peterson

Defendant proposes to have Foster Peterson, an engineer who previously worked as a railroad official, render opinion testimony based on his expertise in train dynamics and train handling. *See* Peterson R. (Doc. No. 39-2) at 3; Def.'s Peterson Resp. (Doc. No. 46) at 1. As reflected in his expert report and deposition testimony, Mr. Peterson used what is known as the Train Operations and Energy Simulator ("TOES") program to simulate and analyze the train dynamics involved in the incident of July 3, 2017. *See* Peterson R. at 8-18; Peterson Dep. 18:1-20:18 (Doc. No. 39-1); Peterson Decl. ¶ 4 (Doc. No. 46-1). The TOES program was developed by the Transportation Technology Center, Inc., which is an organization that provides transportation research and testing services for the rail industry. Peterson Decl. ¶ 4. According to Mr. Peterson, "BNSF and other Class I railroads utilize[] TOES to perform longitudinal train dynamic stimulation analysis, including to determine the in-train coupler forces generated between locomotives and cars in moving trains." *Id.*

Mr. Peterson and his staff entered multiple items of data into the simulation, including: track information (grade and curvature data), train information (locomotive and railcar types, lengths, and gross weights), and the train handling commands. Peterson Dep.

22:15-23:1; Peterson R. at 11. Using TOES, Mr. Peterson calculated the peak acceleration range and the in-train forces applied to the lead locomotive where Plaintiff was standing. Peterson Decl. ¶¶ 5-8; Peterson R. at 17-18.

In Plaintiff's Motion to Exclude Peterson (Doc. No. 39), he does not dispute that Mr. Peterson is qualified to provide such testimony. Rather, citing the relevance and reliability requirements of *Daubert*, Plaintiff objects to several discrete aspects of Mr. Peterson's opinions. *See id.* at 5, 8-9.

### 1. Maximum Compressive Force

Mr. Peterson opined that, using the TOES program, he determined that the "in-train coupler force on the locomotive in which [Plaintiff] [was] riding" would have been approximately -304,000 pounds. Peterson Decl. ¶¶ 4-6; *see also* Peterson R. at 18. Plaintiff criticizes this opinion, arguing that Mr. Peterson "has no explanation as to how he came to the figure." Pl.'s Mot. to Exclude Peterson at 8. Both Mr. Peterson's Report and his deposition testimony, however, present a detailed account of his methodology, including the use of the TOES program, and an explanation of how he determined that "[t]he maximum forces predicted on the lead locomotive during the recoupling simulation were +22 kips draft and -304 kips buff." Peterson R. at 18; *see also id.* at 11, 15-18; Peterson Dep. 20:19-21:7. Plaintiff's Motion does not offer any specific challenge to this methodology.

Plaintiff relatedly asserts that, "[i]f one were to take the scenario of that mass times acceleration would give us the force of the impact as stated by Mr. Peterson in his deposition, 32 million pounds times 3 to 4 miles per hour certainly would not give you the

number of 304,000 pounds." Pl.'s Mot. to Exclude Peterson at 8. Plaintiff does not explain these numbers, although there are references in the record to the relevant train (though not individual sections) weighing 16,000 tons, and Defendant's Response clarifies that Plaintiff's use of "3 to 4 miles per hour" is a reference to the "difference in velocity between the two sections of the train." Def.'s Peterson Resp. at 9. In any event, Mr. Peterson expressly testified that while force and acceleration are related by the equation F=ma, when two portions of a train make contact with each other, "not all of the mass of the train is applied to the object as force at the instant of the coupling."[2] Peterson Decl. ¶ 13. Mr. Peterson also explained that the difference in velocity between two objects "is not equivalent to acceleration," as "[a]cceleration is the change in velocity over the time that change occurs." *Id.* ¶ 12. Plaintiff offers no specific challenge to these explanations.

Although Plaintiff may believe that his equation and figures are the better calculator of force, he fails to show any lack of reliability or an insufficient factual foundation in Mr. Peterson's chosen calculation. The Court is not "in a position to declare" whether Mr. Peterson's opinion "is, in fact, correct." *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 994 (10th Cir. 2003). Plaintiff's dispute of the accuracy of Mr. Peterson's conclusion is a matter for cross-examination rather than for exclusion under Rule 702 and *Daubert*. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

---

[2] "This is because the train is not one solid mass, but a group of individual cars connected by couplers[,] which i[n] turn are connected to the cars/locomotives themselves by draft gears or hydraulic end-of-car cushion units. These draft gears or cushion units are effectively shock absorbers and absorb energy from in-train coupler forces generated during couplings or slack events." Peterson Decl. ¶ 13.

means of attacking shaky but admissible evidence."); *see also Alnahhas v. Robert Bosch Tool Corp.*, No. CIV-13-178-D, 2018 WL 2293965, at *5 (W.D. Okla. May 18, 2018) (noting that "rejection of expert testimony is the exception rather than the rule").

## 2. *Acceleration and the Occupants' Movements*

Mr. Peterson noted Plaintiff's allegation that when the collision occurred, Plaintiff "had begun descending the steps" and "was severely thrown to the cab floor due to sudden movement of the lead locomotive." Peterson R. at 19. In his Report, Mr. Peterson calculated that the peak acceleration range upon the lead locomotive was 0.14 to 0.71g. Peterson R. at 18; Peterson Decl. ¶ 8. According to Mr. Peterson, such accelerations "are typical of and are routinely experienced on locomotives during freight train operation." Peterson R. at 18. Mr. Peterson further stated that, "in [his] direct experience," such accelerations "are not of a magnitude that would . . . cause the types of movements alleged by [Plaintiff]." *Id.*

Plaintiff objects that this opinion is contradicted by testimony offered by Defendant's expert Dr. Amber Stern, who reportedly "admits that forces less than the ones measured by Mr. Peterson were sufficient to cause people to lose the[ir] balance and fall down in airport trams." Pl.'s Mot. to Exclude Peterson at 8.[3] A lack of consistency with a second expert's opinion is not, in and of itself, a basis for exclusion under Rule 702 and

---

[3] Plaintiff's Motion fails to provide a citation to Dr. Stern's testimony (or attach the testimony itself), but it appears he is referring to a portion of her deposition where she stated that a person can lose his balance on an airport tram on which the accelerations are in the lower end of the range calculated here and if the person is "not able to regain his balance, a fall can't be ruled out." Stern Dep. 41:14-43:1 (Doc. No. 40-1); *see also* Fed. R. Civ. P. 56(c)(3).

*Daubert*.  *Cf. Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1128 (D. Colo. 2006) ("The dispute between these experts . . . goes to the weight of the survey evidence and does not warrant exclusion."); *Reed v. Smith & Nephew, Inc.*, 527 F. Supp. 2d 1336, 1344 (W.D. Okla. 2007) (noting that a party's "disagreement with the expert's conclusion is not grounds for exclusion" (internal quotation marks omitted)).

Plaintiff further argues, again citing Dr. Stern's testimony, that Mr. Peterson's opinion regarding acceleration upon the lead locomotive and the occupants' movements must be excluded because Mr. Peterson fails to measure "the forces imparted to [Plaintiff's] shoulder and spine when he f[ell] down."  Pl.'s Mot. to Exclude Peterson at 8.  But Mr. Peterson calculated acceleration in regard to the lead locomotive, not specifically upon any occupant therein, and he was not asked to perform the type of biomechanical analysis done by Dr. Stern (addressed further below).  The Court is required to examine the admissibility of opinions Mr. Peterson will actually render, not those opinions Plaintiff would like to see.  *Cf. Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992) (noting Tenth Circuit authority for the proposition that "otherwise relevant, factually related expert opinion" can support a claim "despite the fact that the expert did not conduct independent tests" (internal quotation marks omitted) (pre-*Daubert*)).  Plaintiff's speculative argument fails to adequately show that Mr. Peterson's omission of such a calculation undermines his issued expert opinions or reflects a defect in the underlying methodology.

### C.  Defendant's Proposed Witness Amber Stern, PhD, PE

Defendant seeks to have Amber Stern, PhD, PE, render opinion testimony based on her expertise in biomechanics.  Dr. Stern has conducted a biomechanical analysis of the

incident of July 3, 2017, including the forces and accelerations experienced by Plaintiff. *See* Stern R. (Doc. No. 42-8) at 3-12.

Plaintiff's Motion is vague. He does not contest Dr. Stern's qualifications to conduct the biomechanical analysis. Nor does he challenge Dr. Stern's identified methodology or specify any particular opinion issued by Dr. Stern as one in which "an impermissible analytical gap exists between premises and conclusion." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005). Rather, Plaintiff argues that Dr. Stern's opinions, as a whole, are not "based on sufficient facts or data."[4] Fed. R. Evid. 702(b); *see* Pl.'s Mot. to Exclude Stern (Doc. No. 42) at 2, 6-7.

Plaintiff objects to Dr. Stern's reliance upon Mr. Peterson's simulation conclusions in forming her opinions—specifically, Mr. Peterson's calculation of the peak forward-directed acceleration range upon the lead locomotive to be 0.14 to 0.71g. *See* Stern R. at 9 (opining that "[t]his level of acceleration is considered low and is routinely experienced during every day and non-injurious activities"). The Federal Rules of Evidence, however, allow an expert such as Dr. Stern to base an opinion upon "facts or data in the case that the expert has been made aware of," Fed. R. Evid. 703, and as set forth above no unreliability

---

[4] Plaintiff nominally raises a relevance argument, arguing that Dr. Stern's opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), but this argument is meritless. Plaintiff simply cites hypothetically helpful opinions rather than explaining how any of Dr. Stern's issued opinions fails to "logically advance a material aspect of the case" or is not "sufficiently tied to the facts of the case [to] . . . aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alteration and internal quotation marks omitted); *cf. Belisle v. BNSF Ry.*, 697 F. Supp. 2d 1233, 1247-48 (D. Kan. 2010) ("Although some aspects of how a body reacts to being struck by a train might be obvious to a jury, the manner of how the body may turn and distance it may be thrown based on weights and angles of being struck are not necessarily common sense conclusions.").

has been shown in Mr. Peterson's calculation that would, in turn, taint an opinion of Dr. Stern.

Plaintiff relatedly argues that Dr. Stern, "by her own admission," "misapplied the acceleration forces of Mr. Peterson" and deviated from her methodology by opining that a person who falls would have an impact acceleration of 5g or 6g, rather than the .14g to .71g that Mr. Peterson found would have been placed upon the lead locomotive. Pl.'s Mot. to Exclude Stern at 8-9 (citing Stern Dep. 46:4-24, 63:2-25). As noted above, however, an inconsistency with another expert does not constitute a lack of relevance or reliability under *Daubert*. Further, Plaintiff fails to offer any reasoned explanation as to how reaching a calculation of acceleration for one event (a falling person) that differs from the acceleration calculated for another event (a moving train) renders Dr. Stern's methodology unreliable or amounts to "an impermissible analytical gap . . . between premises and conclusion" of the relevant opinion. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005).

The remaining flaws alleged regarding Dr. Stern's analysis—e.g., a failure to offer an opinion regarding Plaintiff's right shoulder—do not demonstrate a lack of reliability in Dr. Stern's opinions and likewise go toward the weight of the expert testimony rather than its admissibility. *See Daubert*, 509 U.S. at 596; *United States v. Cavely*, 318 F.3d 987, 998 (10th Cir. 2003).

Plaintiff has not been shown that Dr. Stern's opinions lack sufficient support or are otherwise unreliable under Rule 702. *See* Fed. R. Evid. 702(b)-(d); *see also Alnahhas*, 2018 WL 2293965, at *5 ("Only when 'an expert['s] opinion is so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded."

(quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995))).[5]

III.  *Defendant's Motion for Summary Judgment*

A.  *Federal Rule of Civil Procedure 56*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits

---

[5] Also pending is a Motion (Doc. No. 43) filed by Defendant seeking exclusion of Plaintiff's expert Paul Byrnes. Because neither the parties' summary-judgment briefing nor the Court's conclusion as outlined below materially relies upon Mr. Byrnes' proposed testimony, the Court does not find it necessary to resolve the Motion to Exclude at this time. *See* Def.'s Mot. Summ. J. at 7, 13; *id.* Ex. 7 (Doc. No. 44-7); Pl.'s Resp. at 9, 20, 21; *id.* Ex. 4 (Doc. No. 46-4).

or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

### B.  Relevant Facts

As referenced above, Plaintiff alleges that he was injured on July 3, 2017, when the BNSF train "went into emergency as a result of a coming apart between the first and second car."  Compl. ¶ 4.  "As a result, the lead two locomotives stopped suddenly, causing the remaining portion of the train to slam into them, causing him to sustain serious bodily injuries and/or aggravation of a pre-existing condition." *Id.*

At the time of the UDE, the train was traveling approximately 45 miles per hour. Dent Dep. 114:25-115:2 (Doc. No. 42-1).  Plaintiff was standing on a step leading down toward the restroom in the lead locomotive.  Pl. Dep. 71:24-73:3 (Doc. No. 44-1).  Plaintiff braced for impact by grabbing a small dash under the window and engineer stand. *Id.* 71:24-72:11.

There was then a slack-action event, in which the rear of the train collided with the front portion of the train.  Dent Dep. 119:12-18; Pl. Dep. 71:24-72:11, 74:4-6, 74:23-25.

During the slack action, Plaintiff was thrown to the back of the cab and landed lying down on the floor with his head up against his bag.  Pl. Dep. 74:15-22, 75:7-21.

As described in more detail below, Plaintiff alleges that as a result of the incident, he "suffered injuries and/or aggravated a pre-existing condition to his right shoulder, neck, back and right knee" resulting in "bodily pain," "loss of enjoyment of life," and "mental, psychological and emotional pain," as well as lost wages and earning capacity.  Compl. ¶¶ 8-10, 14-16.

### C.  Discussion

Defendant has moved for summary judgment on both the FELA and FSAA claims, arguing that Plaintiff has not demonstrated a causal connection between Defendant's alleged improper conduct and Plaintiff's injuries.  *See* Def.'s Mot. Summ. J. at 18-20. Defendant additionally argues that Plaintiff cannot recover his claimed damages for emotional distress under FELA.  *See id.* at 21-23.

### 1.  FELA and FSAA

Plaintiff's FELA claim alleges that Defendant is liable under 45 U.S.C. § 51, which provides:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier  . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, . . . or other equipment.

45 U.S.C. § 51.

The Tenth Circuit recently summarized the four elements of a FELA claim:

(1) the employee was injured within the scope of his employment, (2) the

employment was in furtherance of the employer's interstate transportation business, (3) the employer was negligent, and (4) the employer's negligence played some part in causing the injury for which the employee seeks compensation under FELA.

*Ezell v. BNSF Ry.*, 949 F.3d 1274, 1279-80 (10th Cir. 2020). "Within element number three is the implicit requirement that a plaintiff establish all of the elements of supporting a negligence finding in order to prevail on a FELA claim." *Smith v. BNSF Ry.*, No. 17-cv-00977-KMT, 2019 WL 3230975, at *9 (D. Colo. July 18, 2019); *see also Makovy v. Kan. City S. Ry.*, 339 F. Supp. 3d 1242, 1245 (E.D. Okla. 2018) ("Liability under the FELA is premised on the railroad's negligence, however small."). "Thus, a plaintiff carries the burden of demonstrating duty, breach, foreseeability, and causation." *Smith*, 2019 WL 3230975, at *9.

Plaintiff also seeks to recover under FSAA, "which is considered an amendment to the FELA." *Makovy*, 339 F. Supp. 3d at 1245.

The FSAA does not create an independent cause of action, but railroad employees can recover for violations of the FSAA under the FELA. In other words, the FSAA provides the basis for the claim, and the FELA provides the remedy. In order to recover on a FELA claim premised on a violation of the FSAA, plaintiff need not prove negligence, but need only prove the statutory violation.

*Id.* (citations omitted).[6]

---

[6] Defendant has filed a "Stipulation" (more aptly, a one-party concession) stating that "on July 3, 2017, a violation of the [FSAA] occurred, causing an unintended emergency braking application." Def.'s Stipulation (Doc. No. 62) at 1. The Court is not bound to accept a stipulation as to a conclusion of law, such as whether there was a violation of the FSAA. *See Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1188 (10th Cir. 2018). Regardless, the parties do not dispute—and for purposes of the determination of Defendant's Motion the Court assumes—that the UDE represents a FSAA violation, leaving only the need for Plaintiff to prove causation in order to establish Defendant's liability. *See* Def.'s Stipulation at 1 ("Defendant specifically denies . . . that the [FSAA] violation caused or contributed to Plaintiff's alleged injuries."); *cf. Makovy*, 339 F. Supp. 3d at 1247 (finding

## 2. *Causation*

Defendant argues that Plaintiff has not met his burden to show causation as to either the FELA claim or the FSAA claim.  Under FELA's relaxed standard of causation, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."  *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (internal quotation marks omitted); *see also Wright v. BNSF Ry.*, 177 F. Supp. 3d 1310, 1317 (N.D. Okla. 2016).  And for his claim premised on violation of FSAA, Plaintiff "must prove that the statutory violation was a causative factor contributing in whole or in part to the accident that caused his injuries."  *Makovy*, 339 F. Supp. 3d at 1245.

Defendant contends that, in light of Mr. Peterson's undisputed opinion "that there was a maximum of 0.71g of acceleration applied to the locomotive carrying Plaintiff," Plaintiff cannot prove "that there is causation between the alleged slack action and his claimed injuries." Def.'s Mot. Summ. J. at 18.  According to Defendant, because its experts found the range of acceleration upon the struck locomotive to be "relatively low and within the range considered safe for volunteer testing," and Dr. Stern testified that "the impact would not have resulted in an acceleration that could have caused [Plaintiff] to be thrown across the cab," the impact was insufficient to cause Plaintiff's physical injuries.  *Id.* at 12, 20, 23 (citing Dr. Stern's testimony that the accelerations experienced by Plaintiff "would have been comparable to non-injurious everyday types of activities," Stern R. at 12).

---

that a per se violation of the FSAA established duty and breach of duty on plaintiff's FELA claim as a matter of law).

The fact that Defendant's experts would not expect to see injuries from the incident to a person in Plaintiff's position based upon their calculations does not demonstrate a lack of a genuine fact dispute as to whether this Defendant "played any part, even the slightest," in producing this Plaintiff's specific injuries or whether the July 3, 2017 UDE caused Plaintiff's injuries "in whole or in part." *CSX Transp.*, 564 U.S. at 688, 692 (internal quotation marks omitted); *Makovy*, 339 F. Supp. 3d at 1245. Plaintiff will present evidence, through his own testimony, of the force he experienced and his condition before and after the collision. *See* Pl. Dep. 76:19-77:1 (Plaintiff testifying that he was thrown to the back of the cab); *cf.* Compl. ¶¶ 8-10, 14-16 (alleging that as a result of the collision Plaintiff suffered physical and mental pain and damages and was required to seek medical care). He will present testimony from Shawn Dent, who also was occupying the lead locomotive and alleges he was injured, of the force he experienced. *See* Dent Dep. 124:7-13 (stating that the slack-action collision had "more severe" force than did hard helicopter landings he had experienced). Further, Plaintiff will present evidence, through the testimony of his treating physicians, that Plaintiff's physical injuries were caused or exacerbated by the work incident of July 3, 2017. *See* Pl.'s Resp. (Doc. No. 44) at 12-13, 16. Finally, Dr. Stern did not testify that the impact "would not have resulted in an acceleration" that could have caused Plaintiff to be thrown; she opined that someone in Plaintiff's position "could have lost his balance" and, if he was not able to regain his balance, "a fall c[ould]n't be ruled out." Stern Dep. 42:9-43:1; *see also* Stern R. at 11-12.

As to the physicians' testimony, Defendant argues that it is inadmissible and therefore should be disregarded in determining the existence of a genuine issue of material

fact. Citing *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999), Defendant contends that

Plaintiff's physicians may not opine on the question of whether the UDE caused Plaintiff's

injuries because they "became aware of pertinent information not from the actual treatment

but from [this] lawsuit." Def.'s Reply (Doc. No. 51) at 5-7. In *Davoll*, the Tenth Circuit

delineated between types of opinion testimony properly offered by a treating physician and

testimony that is inadmissible as beyond the physician's ken. *See Davoll*, 194 F.3d at 1138

(stating "[a] treating physician is not considered an expert witness if he or she testifies

about observations based on personal knowledge, including treatment of the party"). As

summarized by the U.S. District Court for the Northern District of Oklahoma:

> A treating physician's testimony may include opinions regarding "prognosis,
> the extent of present and future disability, and the need for future medical
> treatment," so long as the opinions are based on the physician's personal
> knowledge gained from the care and treatment of the plaintiff. The testimony
> may also extend to opinions on causation, but only "to the limited extent that
> opinions about the cause of an injury are a necessary part of a patient's
> treatment." *Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 479 (D. Kan.
> 2001); *see also Richard v. Hinshaw*, 2013 WL 6709674, at *2 (D. Kan. Dec.
> 18, 2013) ("[M]atters within the scope of [treating physician's] treatment
> may include opinions about causation, diagnosis, and prognosis"); *Trejo v.
> Franklin*, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007) (stating that
> "treating physician opinions regarding causation and prognosis based on
> examination and treatment of the patient" are proper under Rule 26(a)(2)(C)).

*Wright v. BNSF Ry.*, No. 13-CV-24-JED-FHM, 2016 WL 1183135, at *2 (N.D. Okla. Mar.

28, 2016) (alterations in original) (citation and internal quotation marks omitted) (limiting

treating physicians' testimony regarding causation to only opinions that "ar[ose] from their

treatment of plaintiff").

Defendant broadly argues that the treating physicians' causation opinions were only

produced in response to deposition questions from Plaintiff's counsel that were predicated

upon "a litany of assumptions" and so arose only by virtue of this lawsuit. Def.'s Reply at 6-7. The Court's review of Plaintiff's physicians' records and deposition testimony reflects that their references to the train collision or its connection to Plaintiff's injuries are at least in part based on their own observations and not predicated solely upon assumptions provided by counsel. *See, e.g.*, Pl.'s Resp. Ex. 13 (Doc. No. 44-13) (emergency-responder record from July 3, 2017); *id.* Ex. 15 (Doc. No. 44-15) (testimony of Dr. Adam Keesling).[7] This proposed testimony, which is admissible consistent with *Davoll*, combined with Plaintiff's own proposed testimony and that of Mr. Dent, is sufficient to create a genuine dispute as to whether Plaintiff's injuries were caused by the UDE.

In sum, Defendant has not shown that it is entitled to summary judgment based upon Plaintiff's inability to prove causation under the FELA or FSAA.

### 3. Damages for Emotional Distress

Defendant argues that Plaintiff may not obtain damages under FELA on the basis of his claimed emotional and psychological distress. *See* Def.'s Mot. Summ. J. at 14-15, 21-23 (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 (1994)). Plaintiff has been in counseling with psychotherapist Amanda Roe since January 2019 and has complained to Ms. Roe of panic attacks, paranoid thoughts, and anxiety. Ms. Roe has diagnosed Plaintiff with major depressive disorder and anxiety disorder NOS. Roe Dep. 12:8-10, 36:1-37:1,

---

[7] To the extent that Defendant seeks the exclusion of all testimony by Plaintiff's physicians on the issue of causation, that request is denied at this time. The physicians may testify to "their treatment and care of plaintiff, as well as plaintiff's prognosis, future treatment requirements, and causation—to the extent that such issues are within their personal knowledge gained during their treatment of plaintif[f]." *Berry v. Transp. Distrib. Co.*, No. 12-CV-488-JED-FHM, 2013 WL 6271605, at *7 (N.D. Okla. Dec. 4, 2013) (emphasis omitted).

28:2-9 (Doc. Nos. 42-11, 44-5). Ms. Roe testified at deposition that she believed with a reasonable degree of psychological certainty that the train incident, combined with this lawsuit and Plaintiff's loss of employment, "have contributed to the anxiety and depression." *Id.* 79:5-17. Ms. Roe also believes that much of Plaintiff's anxiety will resolve with the conclusion of this lawsuit but that Plaintiff and she would need to continue to meet "for a bit of time afterwards." *Id.* 80:4-12.[8]

In *Gottshall*, the Supreme Court delineated "the proper scope of an employer's duty under the FELA to avoid subjecting its employees to negligently inflicted emotional injury." *Norfolk & W. Ry. v. Ayers*, 538 U.S. 135, 146 (2003) (alteration and internal quotation marks omitted). The test selected in *Gottshall*

> confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) "sustain a physical impact as a result of a defendant's negligent conduct"; or (2) "are placed in immediate risk of physical harm by that conduct"—that is, those who escaped instant physical harm, but were "within the zone of danger of physical impact."

*Id.* (quoting *Gottshall*, 512 U.S. at 547-48); *see also Smith v. Union Pac. R.R.*, 236 F.3d 1168, 1171 (10th Cir. 2000) (noting that in *Gottshall*, the Supreme Court "focused on whether emotional injuries were generally compensable under FELA"). More recently, the Supreme Court summarized that its "decisions in *Gottshall* and [*Metro-North Commuter*

---

[8] Also pending is a Motion (Doc. No. 38) filed by Plaintiff seeking exclusion of the opinions of Defendant's expert Russell Adams, PhD. Dr. Adams conducted a psychological evaluation of Plaintiff in August 2019. *See* Doc. No. 42-10. Even assuming that Dr. Adams' opinions ultimately are considered as Defendant would prefer, Defendant fails to show it is entitled to judgment as a matter of law on the question of the availability of emotional distress damages. *Cf. id.* (noting Plaintiff's complaints of physical injury from the train collision and suspicion that BNSF was having him followed; diagnosing Plaintiff with anxiety disorder NOS and depressive disorder).

*R.R. v. Buckley*, 521 U.S. 424 (1997)] describe two categories" of FELA emotional-distress claims: (1) "emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted"; and (2) "[s]tand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test." *Ayers*, 538 U.S. at 147.

Here, Defendant argues that Plaintiff has not shown that he was "placed in immediate risk of physical harm" by Defendant's conduct and thus cannot prove that he was within the "zone of danger" for which emotional-distress damages are recoverable under the second category in *Gottshall*. *See* Def.'s Reply (Doc. No. 50) at 7. In response, Plaintiff relies on the first category in *Gottshall*, noting the Supreme Court's pronouncement that "'claims for pain and suffering associated with, or "parasitic" on, a physical injury are traditionally compensable.'" Pl.'s Resp. at 21 (quoting *Ayers*, 538 U.S. at 148). Defendant does not dispute that Plaintiff to at least some degree "sustain[ed] a physical impact." Def.'s Reply at 7 (internal quotation marks omitted). Given Plaintiff's allegation that he was thrown across a locomotive car due to Defendant's negligence, the first category appears more fitting to these circumstances.

Defendant further objects, however, that Plaintiff's "paranoia, anxiety, and depression" are insufficiently causally linked to either Plaintiff's physical "shoulder, arm, back, and/or neck" injuries to permit recovery of emotional-distress damages. Def.'s Mot. Summ. J. at 22-23; Def.'s Reply at 8-9. In support, Defendant cites an unpublished decision from the U.S. District Court for the Eastern District of New York in which that court addressed a claim for emotional-distress damages made by a locomotive engineer.

*See Marzocchi v. Long Island R.R.*, No. 13-CV-7097 (SMG), 2016 WL 3840929 (E.D.N.Y. July 12, 2016).

In *Marzocchi*, the engineer observed a trespasser in the path of the train and immediately engaged the train's emergency brake, injuring her thumb. After the accident, the engineer suffered emotional distress and was diagnosed with post-traumatic stress disorder. *See id.* at *1. The railroad sought summary judgment on the engineer's claims for emotional injury under FELA. Relevant here, the district court declined to allow the engineer to pursue these claims as a follow-on to the thumb injury, finding "no compelling reason why the fortuity of a minor, incidental physical injury should be sufficient to support a claim for emotional distress damages that could not be asserted by a similarly situated plaintiff who escaped the underlying event without harm." *Id.* at *6; *see also id.* at *7 ("[P]laintiff may not recover for emotional distress absent some showing of causal connection between distress and either her physical injury or her concern for her own safety.").

The Court does not find this authority applicable. The *Marzocchi* court was concerned with forestalling an attempt to recast a zone-of-danger claim as a physical-injury claim. *See id.* at *6-7 (e.g., asking whether the plaintiff's distress was triggered by concern for her own safety as opposed to the safety of third persons). Unlike in *Marzocchi*, Plaintiff's alleged injuries are not minor or incidental to the physical impact he experienced. It is undisputed that Plaintiff has received medical treatment for these injuries since the date of the incident. Further, the Court declines to read a requirement of a "causal connection" into the relevant Supreme Court decisions. *Compare id.* at *7, *with Ayers*, 538

U.S. at 154 (rejecting an argument that fear of cancer was "too unrelated" to the asbestosis injury to be an element of pain and suffering where there was "an undisputed relationship" between the two). "Once found liable for any bodily harm, a negligent actor is answerable in damages for emotional disturbance resulting from the bodily harm *or from the conduct which causes it*." *Ayers*, 538 U.S. at 154 (internal quotation marks omitted). Although there is a limit to how far this liability may extend, *see, e.g.*, *Buckley*, 521 U.S. at 430, the Court is unable to say on the current record that there is no "relationship" present or that Defendant is entitled to judgment on this claim. *See Ayers*, 538 U.S. at 154; *see, e.g.*, Roe Dep. 79:5-17 (opining that the train accident contributed to Plaintiff's anxiety and depression).

Finally, citing various nonprecedential authorities, Defendant argues that Plaintiff's "emotional distress that is due to the stress of this ongoing litigation is not recoverable." Def.'s Mot. Summ. J. at 21-22; Def.'s Reply at 7-8. Plaintiff does not raise any counter to this argument. *See* Pl.'s Resp. at 21-22. Because Plaintiff's emotional-distress claim is also premised upon other factors, *see, e.g.*, Roe Dep. 79:5-17 (citing the train accident, the employment consequences, and this lawsuit as factors), the issue is better suited to a motion in limine and/or a jury-instruction request and does not support preclusion of such a claim in its entirety.

CONCLUSION

As outlined above:

1. Plaintiff's Motion to Exclude Defendant's Expert Foster Peterson (Doc. No. 39) is DENIED;

2. Plaintiff's Motion to Exclude Defendant's Expert Amber Stern, PhD, PE (Doc. No.

40) is DENIED;

3. Defendant's Motion for Summary Judgment (Doc. No. 42) is DENIED.

IT IS SO ORDERED this 20th day of March, 2020.

CHARLES B. GOODWIN
United States District Judge